IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM INDELICATO,<br>　　　　　　　　　　Plaintiff,<br>　　v.<br>LIBERTY TRANSPORTATION, INC.,<br>　　　　　　　　　　Defendant. | CIVIL ACTION<br><br>ELECTRONICALLY FILED ON<br>MAY 10, 2019<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

William Indelicato ("Plaintiff") brings this lawsuit against Liberty Transportation, Inc. ("Defendant"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et. seq., and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 160, et seq.[1]

### JURISDICTION AND VENUE

1.	This Court has subject matter jurisdiction over the FLSA claim pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2.	This Court has subject matter jurisdiction over the NYLL claim pursuant to 28 U.S.C. § 1367.

3.	Venue is proper pursuant to 28 U.S.C. § 1391.

---

[1] Plaintiff – who lives in Cheektowaga, NY – originally commenced this lawsuit in the United States District Court for the Western District of New York. However, on August 16, 2018, the assigned Magistrate Judge issued a report and recommendation finding that Plaintiff's complaint should be dismissed without prejudice because the Western District of New York lacked personal jurisdiction over Defendant. See Indelicato v. Liberty Transportation, Inc., 2018 U.S. Dist. LEXIS 139036 (W.D.N.Y. Aug. 16, 2018). On April 16, 2019, the district court adopted the report and recommendation and entered an order dismissing Plaintiff's complaint without prejudice. See Indelicato v. Liberty Transportation, 2019 U.S. Dist. LEXIS 59544 (W.D.N.Y. April 6, 2019). Thus, Plaintiff is pursuing his claims in this judicial district because Defendant is headquartered in Westmoreland County.

1

## PARTIES

4.  Plaintiff is an individual residing in Cheektowaga, NY.

5.  Defendant is a corporation headquartered in Greensburg, PA (Westmoreland County) and conducting business in this judicial district.

6.  Defendant is engaged in commerce and, furthermore, employs individuals engaged in the production of goods for commerce and/or handling, selling, or working on goods or materials that have been moved in or produced in commerce. As such, Defendant is covered by the FLSA.

## FACTS

7.  Defendant owns and operates a trucking and delivery company that transports and delivers goods to customers throughout the United States.

8.  Plaintiff worked for Defendant as a driver from approximately March of 2017 until his termination on March 22, 2018.

9.  Plaintiff signed a standardized "Contractor Agreement" that purports to make him a non-employee "Independent Contractor." However, in determining employment status under the FLSA and NYLL, the mere "label[ing] of workers as independent contractors is not controlling." Brock v. Superior Care, Inc., 840 F.2d 1054, 1059 (2d Cir. 1988);[2] cf Liberty Transportation, Inc. v Unemployment Compensation Board of Review, 2016 Pa. Commw.

---

[2] See also Rutherford Food Corp. v. McComb, 331 U.S. 722, 729 (1947) ("Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the [FLSA]."); Sandrino v. Michaelson Assocs., LLC, 2012 U.S. Dist. LEXIS 165143, *26 (S.D.N.Y. Nov. 19, 2012 ("The test for whether a person is deemed to be an independent contractor for purposes of New York Labor Law does not depend, however, on what the person has labeled themselves.").

2

Unpub. LEXIS 877 (Pa. Commw. Dec. 22, 2016) (purported "independent contractor" working for Defendant deemed employee under Pennsylvania unemployment law).

10. Defendant closely monitored the work of Plaintiff. For example, according to Defendant's website: "Our equipment is monitored by satellite, so we know where all of our trailers are located throughout the US within 50 yards . . . ." http://libertytran.com/full-truck-load-services/ (as of February 13, 2018).

11. Plaintiff leased his truck from Defendant's affiliate (Landmark Leasing, Inc., which shares a common ownership and headquarters with Defendant) and was required to obtain Defendant's approval in order to use the truck on behalf of companies other than Defendant.

12. Plaintiff was not required to have any special skills beyond those required of any commercial truck driver.

13. While working for Defendant from approximately March of 2017 until his termination on March 22, 2018, Plaintiff did not have any additional sources of income.

14. The services performed by Plaintiff – driving and delivering goods to customers – were integral to Defendant's business. Indeed, Defendant's business could not exist in the absence of drivers such as Plaintiff.

15. Plaintiff was paid by Defendant every two weeks.

16. Defendant made substantial deductions from Plaintiff's paychecks. These deductions were for the sole benefit of Defendant and included items such as insurance, vehicle lease payments, vehicle maintenance payments, fuel, on board recording device (which the Defendant used to track the every move of its drivers), occupational accidental insurance (workers' compensation insurance), and other miscellaneous expenses.

3

17. These deductions were so significant that they sometimes resulted in Plaintiff's hourly wage falling below the minimum wage required by the FLSA ($7.25 during all relevant times) and the NYLL (ranging from $7.25 to $15.00 during the relevant six-year period and depending on work location). For example, during the two-week period ending on February 3, 2018, Defendant subjected Plaintiff to the following deductions: $1,868.45 for fuel; $343.82 for insurance; $728.04 for the truck lease; $260.59 for vehicle maintenance; $17.00 for the on board recording device lease fee; and $76.00 for workers' compensation insurance. In the wake of these deductions, Plaintiff was left with only $358.46 in pay for a two-week period in which he worked approximately 70 hours

18. On February 16, 2018, Plaintiff filed a class/collective action lawsuit in the Western District of New York against Defendant alleging that Defendant violated the FLSA and the NYLL by failing to pay the minimum wage to Plaintiff and other truck drivers and for taking impermissible deductions from their pay. See Indelicato v. Liberty Transportation, Inc., 1:18-cv-00253 (W.D.N.Y.) ("the New York Lawsuit").

19. Shortly after Plaintiff filed the New York Lawsuit, Plaintiff spoke with other drivers about the lawsuit and, as a result, Defendant's management became aware of the lawsuit. About a week after the lawsuit was filed, Defendant's Shop Manager, Chuck Plah, told Plaintiff "that 10 have tried before you and 10 have failed, what makes you think you're going to be any different."

20. In March 2018, Mr. Plah and Defendant's General Manager, Mark Palla, unjustifiably refused to authorize necessary repairs for Plaintiff's truck. When Plaintiff spoke with Mr. Plah to request that Defendant authorize the repairs, Mr. Plah told Plaintiff that "if you don't get out of my f**king shop, things are going to get ugly."

4

21. On March 22, 2018, Defendant terminated Plaintiff's employment based on fabricated allegations that Plaintiff engaged in threatening conduct.

22. Plaintiff never engaged in threatening conduct. Instead, the fabricated allegations that Defendant used to terminate Plaintiff's employment were a pretext for Defendant to retaliate against Plaintiff because he filed the New York Lawsuit.

### COUNT I – FLSA – FAILURE TO PAY MINIMUM WAGE

23. All previous paragraphs are incorporated as though fully set forth herein.

24. The FLSA entitles employees to a minimum wage of $7.25 per hour. See 29 U.S.C. § 206(a)(1)(C).

25. Defendant is an employer required to comply with the FLSA, and Plaintiff is an employee entitled to the law's protection.

26. During some weeks, Defendant willfully violated the FLSA's minimum wage mandate by paying Plaintiff post-deduction compensation of under $7.25/hour.

### COUNT II – NYLL – FAILURE TO PAY MINIMUM WAGE

27. All previous paragraphs are incorporated as though fully set forth herein.

28. During the past six years, the NYLL has entitled employees to a minimum wage ranging from $7.25/hour to $15.00/hour depending on the time period and work location. See N.Y. Lab. Law § 652.

29. Defendant is an employer required to comply with the NYLL, and Plaintiff is an employee entitled to the law's protections.

30. During some weeks, Defendant willfully violated the NYLL's minimum wage mandate by paying Plaintiff post-deduction compensation falling below the required minimum wage.

### COUNT III – NYLL – ILLEGAL WAGE DEDUCTIONS

31. All previous paragraphs are incorporated as though fully set forth herein.

32. The NYLL generally prohibits employers from subjecting employees to pay deductions that are not "for the benefit of the employee." N.Y. Lab. Law § 193(1)(b). Moreover, such deductions, must be authorized by the employee, and the authorization must be "voluntary and only given following receipt by the employee of written notice of all terms and conditions of the payment and/or its benefits and the details of the manner in which deductions will be made." Id.

33. Defendant is an employer required to comply with the NYLL, and Plaintiff is an employee entitled to the law's protections.

34. Defendant violated the NYLL by making pay deductions that are not for the benefit of Plaintiff and, furthermore, have not been authorized by the appropriate written notice.

### COUNT IV – FLSA – ANTI-RETALIATION

35. All previous paragraphs are incorporated as though fully set forth herein.

36. Under the FLSA, an employer may not "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding" asserting FLSA rights. 29 U.S.C. § 215(a)(3).

37. Defendant violated the above provision by terminating Plaintiff's employment in retaliation for his pursuit of the New York Lawsuit.

38. In violating the FLSA, Defendant acted willfully and with reckless disregard of clearly applicable FLSA provisions.

### COUNT V – NYLL – ANTI-RETALIATION

39. All previous paragraphs are incorporated as though fully set forth herein.

40. Under the NYLL, an employer may not "discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee [ . . . ] because such employee has caused to be instituted or is about to institute a proceeding under or related to this chapter." N.Y. Lab. Law § 215(1)(a).

41. Defendant violated the above provision by terminating Plaintiff's employment in retaliation for his pursuit of the New York Lawsuit.

## PRAYER FOR RELIEF

Plaintiff seeks the following relief:

    a. Unpaid minimum wages;

    b. Reimbursement of all pay deductions;

    c. Unpaid past and future wages and benefits stemming from the termination of Plaintiff's employment;

    d. Compensatory damages, including damages for the emotional pain and suffering caused by Plaintiff's termination and subsequent unemployment;

    e. Liquidated damages, punitive damages, and/or penalties available under the FLSA and/or NYLL;

    f. Prejudgment interest;

    g. Litigation costs, expenses, and attorney's fees to the fullest extent permitted under federal and state law; and

    h. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial.

Date: May 10, 2019

Respectfully,

*/s/ Mark J. Gottesfeld*
Peter Winebrake
R. Andrew Santillo
Mark J. Gottesfeld
Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491

*Plaintiff's Counsel*

8